UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARASTOU MONJAZEB; J&L HOLDINGS, INC.; and JAGUAR-LAND ROVER BELLEVUE, INC., | NO. |
| | COMPLAINT |
| Plaintiffs, | JURY DEMAND |
| v. | |
| JAGUAR LAND ROVER NORTH AMERICA, LLC, | |
| Defendant. | |

## I.  INTRODUCTION

1.1.   Plaintiff Arastou Monjazeb owned several car dealerships in the state of Washington, including two Jaguar Land Rover car dealerships through his corporations J&L Holdings, Inc. ("J&L Holdings" or "Lynnwood Dealership") and Jaguar-Land Rover Bellevue, Inc. ("JL Bellevue" or "Bellevue Dealership").

1.2.   Through Dealership Agreements with Jaguar Land Rover North America, LLC ("JLRNA"), J&L Holdings and JL Bellevue are non-exclusive authorized dealers of Jaguar Land Rover ("JLR") products.

COMPLAINT - 1

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1.3. Under the Dealer Agreements, JLRNA has a right of first refusal ("ROFR") on any transaction proposing a change of ownership or management, sale of all or substantially all of the assets, or transfer of rights or obligations ("Proposal"). JLRNA may complete the transaction on the same terms and conditions offered.

1.4. If JLRNA did not exercise its ROFR, it nevertheless had the right to approve or reject the proposed sale to the third party. JLRNA agreed to not unreasonably withhold its approval of any Proposal.

1.5. In September 2022, Plaintiffs agreed to sell the Lynnwood Dealership and Bellevue Dealership assets to Go Auto Dealerships, Inc. ("Go Auto"), a Canadian company, in a transaction which included $75 million for goodwill.

1.6. In January 2023, Plaintiffs and Go Auto finalized the terms of the definitive agreements for the transaction.

1.7. In or about July 20, 2023 Jason Smith, Chief Executive of Go Auto, met with Joachim Eberhardt, President and Chief Executive Officer of JLRNA, to seek informal approval of the transaction prior to submitting a formal proposal to JLRNA.

1.8. Mr. Eberhardt misrepresented to Mr. Smith that JLRNA had recently awarded rights to another party to open a new JLR dealership somewhere in the greater Seattle metro market, and the award had been signed or would be signed the following week. The parties referred to dealerships as "points."

1.9. A new point in the Seattle metro market would mean new competition for JLR customers and concomitant lower sales and revenues for existing dealerships, like the JLR Dealerships. As such, this misrepresentation resulted in Go Auto revising its offer with respect

to the goodwill value of the JLR Dealerships from $75 million to $50 million in August 2023. Plaintiffs ultimately accepted the reduced offer.

1.10. On November 14, 2023, JLRNA provided notice to Plaintiffs that it was exercising its ROFR and electing to purchase the JLR Dealerships on the same terms as the Go Auto transaction, which included the goodwill value of $50 million.

1.11. Also on November 14, 2023, JLRNA assigned its right pursuant to its exercise of its ROFR to Fields PAG, Inc. ("Fields").

1.12. Plaintiffs bring this action against JLRNA, seeking damages for breach of the implied duty of good faith and fair dealing, fraudulent and negligent misrepresentation, and tortious interference with a business expectancy, to recover the $25 million they lost as a result of JLRNA's misrepresentation.

## II. PARTIES

2.1. Plaintiff Arastou Monjazeb is an individual domiciled in Washington. He is the sole shareholder, director, and president of J&L Holdings, Inc., which is the sole shareholder of JLR Bellevue, for which Mr. Monjazeb is the director and president. Mr. Monjazeb is the sole member and manager of Seattle Investment Properties, LLC, which owns the real estate on which J&L Holdings operates. Mr. Monjazeb is also the sole manager and majority member of Bellevue 1709, LLC and Bellevue 13817, LLC, which own the real estate on which JLR Bellevue operates.

2.2. Plaintiff J&L Holdings, Inc. ("J&L Holdings" or "Lynnwood Dealership") is a corporation organized under the laws of Washington with its principal place of business in Lynnwood, Washington. J&L Holdings operates a franchised JLR automotive sales and service business in Lynnwood, Washington.

2.3.  Plaintiff Jaguar-Land Rover Bellevue, Inc. ("JLR Bellevue" or "Bellevue Dealership" and together with the Lynnwood Dealership, the "JLR Dealerships") is a corporation organized under the laws of Washington with its principal place of business in Bellevue, Washington.  JLR Bellevue operates a franchised JLR automotive sales and service business in Bellevue, Washington.

2.4.  Defendant Jaguar Land Rover North America, LLC ("JLRNA") is a corporation organized under the laws of Delaware with its principal place of business in Mahwah, New Jersey.  JLRNA is the exclusive authorized distributor in North America of vehicles, parts, and accessories manufactured and sold by JLR.

### III.  JURISDICTION AND VENUE

3.1.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.  This Court has supplemental jurisdiction over all claims in this action pursuant to 28 U.S.C. § 1367.

3.2.  Venue is proper under 28 U.S.C. § 1391(b)(2) because the causes of action arose substantially out of events occurring in Washington state and the dealerships are located in Washington.

### IV.  FACTUAL ALLEGATIONS

4.1.  Plaintiff Arastou Monjazeb is the sole shareholder, director, and president of J&L Holdings, which operates a Jaguar Land Rover dealership in Lynnwood, WA.  Plaintiff J&L Holdings is the sole shareholder of Plaintiff JLR Bellevue, which operates a Jaguar Land Rover dealership in Bellevue, WA.  Mr. Monjazeb is the director and president of JLR Bellevue.

4.2.  Mr. Monjazeb owns other car dealerships in the state of Washington.

COMPLAINT - 4

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

4.3. Through Dealer Agreements with Jaguar Cars, a division of Ford Motor Company, J&L Holdings and JLR Bellevue are non-exclusive authorized dealers in JLR automobiles and related products.

4.4. In 2008, Jaguar Land Rover North America, LLC replaced Jaguar Cars, a division of Ford Motor Company, as a party to the Dealer Agreements as a result of the purchase of Jaguar Cars and Land Rover by Tata Motors, JLR's parent company.

4.5. The Dealer Agreements provide that in the event of the sale of all or substantially all of the assets of the JLR Dealerships, the JLR Dealerships would submit such Proposal to JLRNA prior to entering any binding contractual agreement.

4.6. The Dealer Agreements also provide that JLRNA would have a ROFR to purchase the stock or assets on the same terms and conditions reflected in the Proposal. Also, should JLNRA not exercise its ROFR, it would have the right to approve or not approve the transaction set forth in the Proposal, but agreed it would "not unreasonably withhold its approval of such a Proposal."

4.7. The Dealer Agreements note that in exercising the ROFR, JLRNA "applies a customer satisfaction 'gateway' policy that evaluates a proposed purchaser's historical customer satisfaction index ('CSI') scores."

4.8. JLRNA had the right to assign its ROFR to any third party ("Assignee"). In the case of any such assignment, JLRNA would guarantee full payment of the purchase price by the Assignee.

4.9. In May 2022, Mr. Monjazeb's broker, Moshe Stopnitzky, introduced him to Go Auto Dealership, Inc. ("Go Auto"), a Canadian company, to discuss the potential sale of the JLR

COMPLAINT - 5

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Dealerships, in addition to Mr. Monjazeb's Toyota and Mercedes-Benz dealerships located in Bellingham, Washington ("Bellingham Dealership").

4.10. At this time, Go Auto already owned JLR dealerships in Canada.

4.11. On September 16, 2022, the parties entered into a letter of intent for the sale of the JLR Dealerships and related real estate assets ("JLR LOI"). The JLR LOI provided for a combined goodwill purchase price of $75 million.

4.12. Around October 2022, Go Auto completed due diligence into the JLR Dealerships and related real estate assets.

4.13. Go Auto and Plaintiffs commenced preparing definitive agreements. Go Auto was represented by Robert Armstrong and Plaintiffs were represented by Mr. Stopnitzky, both of whom are experienced brokers in the automotive industry.

4.14. The JLR LOI provided that, in addition to purchasing the JLR Dealerships' assets, Go Auto would purchase the real estate on which the JLR Dealerships operated; however, transfer of the Bellevue dealership real estate would occur in five years, during which Go Auto would lease the real estate.

4.15. After the parties reached agreement on terms but before they executed final definitive agreements, Jared Priestner, Go Auto's principal, contacted Wolfgang Hoffman, president of Jaguar Land Rover Canada. During that conversation Mr. Priestner told Mr. Hoffman that Go Auto wanted to acquire two JLR dealerships in the Seattle market and asked him how JLRNA would respond. Go Auto was concerned because of a threat of litigation by certain Canadian JLRNA dealers against JLRNA.

COMPLAINT - 6

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

4.16. Mr. Hoffman urged Go Auto to delay executing the final agreements and meet with Joachim Eberhardt, President and Chief Executive Officer of JLRNA, personally before submitting a formal proposal to JLRNA.

4.17. Mr. Priestner and Jason Smith, Chief Executive Officer of Go Auto, relayed this conversation with Mr. Hoffman to Mr. Monjazeb.

4.18. Mr. Monjazeb agreed to delay executing the final agreements while Go Auto sought a meeting with Mr. Eberhardt.

4.19. The expectation was that Go Auto would discuss the transaction with Mr. Eberhardt at a March 2023 automotive dealer meeting in the United Kingdom. However, all Canadian JLRNA dealers were uninvited from the March 2023 meeting because of a threatened class action lawsuit against JLRNA by certain Canadian JLRNA dealers. Neither Mr. Monjazeb nor Go Auto attended the March 2023 meeting. Canadian JLRNA dealers were later invited to a separate meeting scheduled for July 20, 2023.

4.20. In May 2023, Mr. Eberhardt and other JLRNA executives visited Mr. Monjazeb at the JLR Dealerships.

4.21. During this meeting, Mr. Eberhardt expressed concern about the JLR Dealerships' low customer satisfaction index ("CSI") scores. Mr. Eberhardt threatened to add another point (dealership) to the Seattle market if the CSI scores did not increase.

4.22. Mr. Monjazeb committed to increasing the CSI scores, but noted challenges beyond his control such as supply chain issues, flawed JLR vehicles, JLRNA's failure to allocate appropriate inventory to dealerships, and difficulty retaining service department employees due to local and state laws related to the COVID pandemic.

4.23. Following the meeting, the JLR Dealerships' CSI scores increased within a few months.

4.24. Also in May 2023, Mr. Stopnitzky told Mr. Monjazeb that there were two other interested buyers for the JLR Dealerships, one of them being Fields. Mr. Monjazeb explained to Mr. Stopnitzky that he wanted to give Go Auto time to meet with JLRNA because he preferred working with Go Auto rather than starting the process over with a new potential buyer. Go Auto had already completed its due diligence into the JLR Dealerships and had further proven its capabilities by closing on the purchase of the Bellingham Dealership on February 1, 2023.

4.25. On July 20, 2023, Go Auto's CEO Mr. Smith attended JLR's Global Retailer Conference in Gaydon, United Kingdom. Mr. Eberhardt arrived at the conference late and sat next to Mr. Smith. During a break in the conference, Mr. Smith introduced himself, and Mr. Eberhardt indicated he knew who Mr. Smith was. Mr. Smith and Mr. Eberhardt met privately later that day, during which Mr. Smith asked Mr. Eberhardt whether JLRNA would be supportive of Go Auto's desire to expand into the U.S. JLR market. Mr. Eberhardt stated that Go Auto's entry into the U.S. JLR market would be welcomed. Mr. Smith mentioned Go Auto's recent purchase of the Bellingham Dealership from Mr. Monjazeb, and Mr. Eberhardt stated that he already knew about that purchase. They then discussed the acquisition of the JLR Dealerships, which Mr. Eberhardt also supported. However, Mr. Eberhardt told Mr. Smith that Go Auto should be aware that an additional point was going into the Seattle market. Mr. Smith asked whether Go Auto could apply for the new point rather than purchasing the JLR Dealerships. Mr. Eberhardt responded that was not possible because the point had already been awarded, and if the award had not been formally approved yet it would be shortly.

COMPLAINT - 8

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

4.26.   On August 10, 2023, Go Auto revised its offer, reducing the goodwill purchase price from $75 million to $50 million, citing the potential new point as justification for the reduction.  Mr. Smith met with Mr. Monjazeb in person and described his conversation with Mr. Eberhardt.

4.27.   Mr. Monjazeb consulted with his broker Mr. Stopnitzky, who agreed that a new point justified a reduction in purchase price.  After considering the offer, Mr. Monjazeb agreed to move forward with Go Auto at the reduced goodwill price of $50 million.

4.28.   On August 30, 2023, the parties executed definitive agreements and conveyed the agreements to JLRNA for approval on September 7, 2023.  JLRNA sought from both Go Auto and Plaintiffs an allocation of the $50 million goodwill among the four franchises that comprised the two dealerships: Jaguar Lynnwood, Land Rover Lynnwood, Jaguar Bellevue, and Land Rover Bellevue.  Mr. Monjazeb and Go Auto discussed potential allocations, but ultimately responded to JLRNA that the transaction was a package deal and allocation was not considered.

4.29.   On October 20, 2023 JLRNA informed Mr. Monjazeb that the transaction approval process was nearly complete, pending background checks and funding verification.

4.30.   On October 27, 2023, JLR Canada's CEO Mr. Hoffman called Go Auto's principal Mr. Priestner, informing him that Mr. Hoffman had been in contact with JLRNA and that Go Auto was going to be approved to purchase the Bellevue dealership, but that JLRNA was going to exercise its ROFR and select a different buyer for the Lynnwood dealership.  Mr. Hoffman also stated that no new point was being added to the Seattle market.

4.31.   Following Mr. Hoffman's call, JLRNA informed Go Auto about its decision to exercise its ROFR and select a different buyer for the Lynnwood dealership in order to provide

competition between the two locations. Go Auto refused, telling JLRNA that it would not agree to purchase anything less than the entire package of both dealerships.

4.32. On November 14, 2023, JLRNA provided notice that it would be exercising its ROFR on the entire transaction, with purchase rights for both dealerships assigned to Fields. Mr. Monjazeb reached out to Jessica Kelleher, JLRNA's Vice President of Network Development, to clarify, as he expected JLRNA to only exercise its right of first refusal with respect to the Lynnwood location. Ms. Kelleher told Mr. Monjazeb that JLRNA decided it would not exercise its right of first refusal for anything less than both dealerships, because the parties were treating the sale as a single transaction. However, Ms. Kelleher stated that Fields had agreed to divest itself of the Lynnwood location after acquiring it, so that JLRNA could achieve its goal of separate ownership of the two dealerships.

4.33. JLRNA's selection of Fields as the buyer for the JLR Dealerships is surprising because Fields operates other JLR dealerships, and on information and belief, have some of the lowest CSI scores in the United States.

4.34. On December 7, 2023, Fields and J&L Holdings and JLR Bellevue signed the amended and restated asset purchase agreement for the sale of the JLR Dealerships.

4.35. The transaction closed on January 8, 2024 for a combined goodwill purchase price of $51,500,000. The slight increase over the $50 million was due to Field's insistence that certain non-cash benefits be eliminated from the offered consideration.

4.36. The parties engaged in mediation in October 2024, but were unable to resolve their dispute.

**V. CAUSE OF ACTION:  BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**

5.1. Plaintiffs reallege the allegations in the preceding paragraphs.

5.2. In every contract there is an implied duty of good faith and fair dealing under Washington law.

5.3. Plaintiffs and Go Auto agreed on a goodwill purchase price of $75 million and were in the process of drafting final definitive agreements.

5.4. JLRNA interfered by informing Go Auto that a new point had been awarded in the Seattle market.

5.5. The new point resulted in Go Auto reducing its offer for the JLR Dealerships' goodwill from $75 million to $50 million.

5.6. After Go Auto reduced its offer to include only $50 million for goodwill, JLRNA informed the parties that it would be exercising its right of first refusal to purchase the JLR Dealerships at the now reduced price.

5.7. After exercising its right of first refusal, JLRNA revealed that there was no new point being added to the Seattle market.

5.8. JLRNA induced the parties into reducing the purchase price by misrepresenting to Plaintiffs and Go Auto that a new point would be added to the Seattle market. JLRNA then exercised its right of first refusal to purchase the JLR Dealerships at the reduced price.

5.9. Therefore, JLRNA breached the implied duty of good faith and fair dealing by exercising its contractual right of first refusal in bad faith.

5.10. As a direct and proximate result of this conduct, Plaintiffs have suffered damages.

### VI. CAUSE OF ACTIOIN: FRAUDULENT MISREPRESENTATION

6.1. Plaintiffs reallege the allegations in the preceding paragraphs.

COMPLAINT - 11

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

6.2. Under Washington law, the nine essential elements of fraud are: (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage.

6.3. JLRNA made a representation of fact that it had awarded a new point in the Seattle market.

6.4. This representation of fact was material because it justified lowering the purchase price of the JLR Dealerships.

6.5. Upon information and belief, this representation was false because JLRNA did not have plans to add a new point to the Seattle market.

6.6. JLRNA knew this representation was false.

6.7. JLRNA made this representation to Go Auto, intending for Go Auto to act upon this knowledge by lowering the purchase price.

6.8. Go Auto was not aware this representation was false when it communicated this representation to Plaintiffs.

6.9. Plaintiffs relied upon the truth of the representation by accepting the lower purchase price.

6.10. Plaintiffs had a right to rely on the representation because it was made by JLRNA, which is a party to the Dealer Agreements. JLRNA had also previously threatened to add a new point to the Seattle market.

6.11. This false representation caused Plaintiffs damages by lowering the purchase price of the JLR Dealerships.

### VII.  CAUSE OF ACTION:  NEGLIGENT MISREPRESENTATION

7.1. Plaintiffs reallege the allegations in the preceding paragraphs.

7.2. Under Washington law, the elements of negligent misrepresentation are: (1) the defendant supplied information for the guidance of another in his or her business transactions, (2) the information was false, (3) the defendant knew or should have known that the information was supplied to guide the plaintiff in his or her business transactions, (4) the defendant was negligent in obtaining or communicating the false information, (5) the plaintiff relied on the false information, (6) the plaintiff's reliance was reasonable, and (7) the false information proximately caused the plaintiff damages.

7.3. JLRNA made a representation that it had awarded a new point in the Seattle market.

7.4. JLRNA made this representation to Go Auto in the context of its acquisition of the JLR dealerships.

7.5. This representation was false, because JLRNA had no plans to add a new point to the Seattle market.

7.6. JLRNA knew Go Auto would act upon this representation by lowering the purchase price of the JLR Dealerships.

7.7. JLRNA was negligent in communicating this false information when there were in fact no plans to add a new point to the Seattle market.

7.8. Go Auto communicated this representation to Plaintiffs, who relied on the representation in accepting a lower purchase price.

7.9. Plaintiffs' reliance was reasonable because JLRNA was a party to the Dealer Agreements and an interested party in the sale of the JLR Dealerships.

7.10. JLRNA had also previously threatened to add a new point to the Seattle market to Plaintiffs.

7.11. This false representation caused Plaintiffs damages by lowering the purchase price of the JLR Dealerships.

## VIII. CAUSE OF ACTIOIN: TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

8.1. Plaintiffs reallege the allegations in the preceding paragraphs.

8.2. A plaintiff claiming tortious interference with a contractual relationship or business expectancy must prove five elements: (1) The existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

8.3. Plaintiffs meet all elements for proving tortious interference with a business expectancy. (1) Plaintiffs and Go Auto had a valid business expectancy and had completed drafting definitive final agreements; (2) JLRNA had knowledge of the deal because Plaintiffs and Go Auto informed JLRNA and submitted the deal for approval; (3) JLRNA intentionally misled Plaintiffs and Go Auto that a new point would be added to the Seattle market, resulting in a reduced purchase price, and then exercised its right of first refusal at the reduced price; (4) JLRNA used improper means (fraudulent representations) to obtain a reduced purchase price; and (5) Plaintiffs suffered damage as a result of JLRNA's tortious interference.

COMPLAINT - 14

GORDON TILDEN THOMAS CORDELL  
600 University Street  
Suite 2915  
Seattle, WA 98101  
206.467.6477

## IX.  REQUEST FOR RELIEF

Plaintiffs ask the Court to enter judgment against JLRNA as follows:

9.1.   Monetary damages in an amount to be determined;

9.2.   Attorneys' fees and costs as allowed by the parties' agreement, law or equity;

9.3.   Pre- and post-judgment interest as allowed by law or equity; and

9.4.   Such other and further relief as is just, equitable, and proper.

DATED this 18th day of November, 2024.

**GORDON TILDEN THOMAS & CORDELL LLP**
Attorneys for Plaintiffs

By  *s/Stephanie Hon*
Mark Wilner, WSBA #31550
Michael P. Brown, WSBA #45618
Stephanie Hon, WSBA #62123
600 University Street, Suite 2915
Seattle, Washington 98101
206.467.6477
mwilner@gordontilden.com
mbrown@gordontilden.com
shon@gordontilden.com