HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11
12
13

| | |
|---|---|
| ARASTOU MONJAZEB; J&L HOLDINGS, INC.; and JAGUAR-LAND ROVER BELLEVUE, INC., <br><br><br> Plaintiffs, <br><br> v. <br><br> JAGUAR LAND ROVER NORTH AMERICA, LLC, <br><br> Defendant. | Civil No.: 2:24-cv-01903-RAJ <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> NOTE ON MOTION CALENDAR: MARCH 28, 2025 |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 3

  A. Plaintiffs' Allegations ........................................................................... 3

  B. Washington's Motor Vehicle Franchise Laws ...................................... 6

III. LEGAL STANDARD ......................................................................................... 7

IV. ARGUMENT ...................................................................................................... 8

  A. Plaintiffs Fail to State a Claim for Fraud. ............................................ 8

    1. Plaintiffs fail to allege that JLRNA made a representation of an existing fact ................................................................................. 9

    2. Plaintiffs fail to plead the element of intent. ............................. 11

    3. Plaintiffs fail to allege justifiable reliance. ............................... 14

    4. Plaintiffs fail to allege falsity. .................................................. 16

    5. Plaintiffs fail to allege materiality ............................................ 17

  B. The Negligent Misrepresentation Claim Must Fail. ........................... 18

  C. The Tortious Interference Claim Must Fail. ....................................... 19

  D. The Breach of the Implied Covenant of Good Faith and Fair Dealing Fails. ....... 22

V. CONCLUSION ................................................................................................. 23

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - ii

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................7

*Bastidas v. Good Samaritan Hosp. LP*,
   774 F. App'x 361 (9th Cir. 2019) (unpublished) .......................................7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................14

*BP W. Coast Prods., LLC v. Shalabi*,
   No. C11-1341MJP, 2012 WL 2277843 (W.D. Wash. June 14, 2012) ...................14

*Brummett v. Washington's Lottery*,
   171 Wash.App. 664 (2012)...........................................................................8

*Colliton v. Cravath, Swaine & Moore LLP*,
   No. 08 CIV 0400 (NRB), 2008 WL 4386764 (S.D.N.Y Sept. 24, 2008), aff'd,
   356 F. App'x 535 (2d Cir. 2009) .........................................................12, 23

*Golden v. Mgmt. & Training Corp.*,
   319 F. Supp. 3d 358 (D.D.C. 2018) .......................................................12, 22

*Graham-Bingham Irrevocable Tr. v. John Hancock Life Ins. Co. USA*,
   827 F.Supp.2d 1275 (W.D. Wash. 2011)...................................................18

*Haberman v. Washington Pub. Power Supply Sys.*,
   109 Wash. 2d 107 (1988)...........................................................................11

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
   58 F.Supp.3d 1166 (W.D. Wash. 2014)...................................................22

*Kane v. City of Bainbridge Island*,
   866 F.Supp.2d 1254 (W.D. Wash. 2011)..................................................21

*In re Metropolitan Securities Litigation*,
   532 F.Supp.2d 1260 (E.D. Wash. 2007) ....................................................8

*Miller v. Amazon.com, Inc.*,
   No. 21-CV-204-BJR, 2024 WL 4554410 (W.D. Wash. Oct. 23, 2024).................8

*Morales v. City and Cnty. of San Francisco*,
   603 F. Supp. 3d 841 (N.D. Cal. 2022) .........................................12, 20, 22

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - iii

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ....................................................................8

*Nyquist v. Foster*,
    44 Wash.2d 465 (1954) ............................................................................9

*Seattle Pac. Indus., Inc. v. Melmarc Prods., Inc.*,
    2007 WL 397450 (W.D.Wash. Jan. 31, 2007) .........................................9, 10, 17

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ..................................................................14

*T-Mobile USA, Inc. v. Huawei Device USA, Inc.*,
    115 F.Supp.3d 1184 (W.D. Wash. 2015) ...................................................20

*W. Challenger, LLC v. DNV GL Group*,
    No. C16-0195-JCC, 2017 WL 6611701 (W.D. Wash. Dec. 27, 2017), *aff'd*
    *sub nom. W. Challenger, LLC v. Seymour*, 765 F. App'x 369 (9th Cir. 2019).................18, 19

*Ward v. Bank of America, N.A.*,
    No. C22-5252 BHS, 2022 WL 4534430 (W.D. Wash. Sept. 28, 2022) ..................7

**Statutes**

Wash. Rev. Code § 46.96.140..........................................................................7, 10, 15

Wash. Rev. Code § 46.96.150..........................................................................7, 10, 15

Wash. Rev. Code § 46.96.160..........................................................................7, 10

Wash. Rev. Code § 46.96.170..........................................................................7

Wash. Rev. Code § 46.96.185..........................................................................6

Wash. Rev. Code § 46.96.200..........................................................................6

Wash. Rev. Code § 46.96.220..........................................................................6

Washington's Motor Vehicle Franchise Laws......................................................6

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ...................................................................................8

Fed. R. Civ. P. 9(b) ..................................................................................8, 17

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 7

Restatement (Second) of Torts § 533.............................................................11

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - iv

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

**PLEASE TAKE NOTICE** that, on March 28, 2025, or as soon thereafter as counsel may be heard, in the Seattle Courthouse of the United States District Court for the Western District of Washington, located at 700 Stewart Street, Suite 12132, Seattle, WA 98101-9906, Defendant Jaguar Land Rover North America, LLC ("JLRNA"), will and hereby does move the Court for an order dismissing Plaintiffs Arastou Monjazeb, J&L Holdings, Inc., and Jaguar-Land Rover Bellevue, Inc.'s (collectively, "Plaintiffs") Amended Complaint (the "AC") in its entirety, and each claim therein, without leave to amend, pursuant to Federal Rules of Civil Procedure, Rules 9(b) and 12(b)(6), on the ground that the AC, and each claim therein, fails to state a claim upon which relief can be granted.

The Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records on file herein, such further papers as may be filed in connection with the motion and such further argument and evidence as may be presented in connection with the hearing on the Motion.

On February 20, 2025, counsel for the parties met and conferred substantively about this Motion. A detailed summary of the parties' meet and confer efforts is provided in the Declaration of Colm A. Moran, filed concurrently with this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

After Plaintiffs filed their original complaint (the "OC"), JLRNA filed its first motion to dismiss (the "MTDOC"). Plaintiffs thereafter amended their claims by filing the AC, and JLRNA withdrew the MTDOC. JLRNA respectfully submits the following memorandum in support of its motion to dismiss the AC.

## I.    INTRODUCTION

JLRNA is the exclusive distributor of Jaguar and Land Rover ("JLR") vehicles and products in the United States. Plaintiffs are the previous owners of two Seattle-based JLR dealerships (the "Dealerships").

The allegations in the AC arise out of Plaintiffs' proposed sale of the Dealerships to non-

---

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 1

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

party Go Auto Dealerships, Inc. ("Go Auto") and a statement purportedly made by JLRNA to Go Auto about a month prior to the execution of an asset purchase agreement for the Dealerships (the "APA"). JLRNA allegedly represented to Go Auto that it had awarded or approved the award of a new point in the Seattle market. As will be discussed below, however, the AC repeatedly conflates and confuses the distinct concepts of (i) the award of a point (a "Point"), which only gives the dealer holding the award the right to attempt to open a new dealership subject to Washington law's complex regulatory scheme; and (ii) the actual opening of a dealership, which may or may not occur until well after the award.

JLRNA's statement purportedly caused Go Auto to reduce its offer to purchase the Dealerships by one-third, allegedly because the opening of an additional JLR dealership in the Seattle market would mean more competition and lower sales and revenues for the Dealerships. Go Auto allegedly repeated JLRNA's statement to Plaintiffs. Plaintiffs claim they believed Go Auto's report without confirmation from JLRNA, and in reliance on Go Auto's report, allegedly agreed to reduce the purchase price from $75 million to $50 million.

The AC further alleges that after executing the APA, which reflected the reduced purchase price, and submitting it to JLRNA for its review and approval, as required by Plaintiffs' dealer agreements with JLRNA (the "Dealer Agreements") and Washington law, JLRNA exercised its contractual and statutory right of first refusal ("ROFR") and assigned its ROFR rights to Fields PAG, Inc. ("Fields"). Thereafter Plaintiffs learned that a new Point would not be added to the Seattle market. Fields then acquired the Dealerships from Plaintiffs for the reduced purchase price.

Like the OC, the AC contains claims for breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, and tortious interference with business expectancy. The gravamen of each claim is that JLRNA's alleged statement to Go Auto regarding the award of a new Point in the Seattle market, as reported to Plaintiffs by Go Auto, caused Plaintiffs to agree to reduce the purchase price, and because an additional Point would not be awarded or added after all, the statement was false.

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 2

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

The OC was deficient, as it omitted entirely essential elements of a particular claim, or made allegations that were conclusory, speculative, factually deficient, internally inconsistent, or implausible. For example, to state a fraud claim, Plaintiffs must plead, *inter alia*, that JLRNA **intended** for Plaintiffs to rely on the representation it allegedly made to Go Auto. The OC, however, only alleged that JLRNA intended for Go Auto (not Plaintiffs) to rely on the representation. It also failed to allege, as required by Washington law, that Plaintiffs were unaware that JLRNA's purported representation to Go Auto was false and instead merely alleged that *Go Auto* was ignorant of its falsity. Further, the basis of the fraud claim as alleged in the OC was the "**potential**" opening of a new dealership in the Seattle market, which concerned a non-actionable future event, not an existing fact.

The OC also failed to plead facts sufficient to support the required elements of intent and justifiable reliance on JLRNA's alleged statement to Go Auto, which also doomed their fraud claims, including any facts demonstrating JLRNA's knowledge of the initial purchase price at any time, much less at the time it allegedly made a representation to Go Auto. Without such knowledge, JLRNA could not have possibly intended to cause a reduction in the purchase price. Under Washington law, moreover, justifiable reliance must be reasonable under the circumstances. That Plaintiffs would agree to a $25 million price reduction in reliance on Go Auto's report without verification from JLRNA is unreasonable on its face, especially because, as the proposed purchaser, Go Auto had a vested financial interest in paying less for the Dealerships. Plaintiffs' other claims, which also relied on JLRNA's alleged statement to Go Auto, fared no better.

As discussed in detail below, the AC does not cure these deficiencies. If anything, the amended allegations have rendered Plaintiffs' claims unintelligible and even more implausible than the OC.

## II.    BACKGROUND

### A.    Plaintiffs' Allegations

The following is a summary of the allegations in the AC and, where materially different,

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 3

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

the allegations in the original complaint (the "OC").

For years, Plaintiffs owned and operated the Dealerships in the Seattle market. (Dkt. #23 at ¶¶ 1.1, 4.1). The Dealer Agreements outlined many of the parties' substantive rights, including JLRNA's right to approve or reject any proposed sale of the Dealerships, provided that JLRNA would not unreasonably withhold its approval. (*Id.* at ¶ 4.4). They further provided that, if Plaintiffs sought to sell the Dealerships, JLRNA could exercise its ROFR and assign its rights thereunder to any third party, which would acquire the Dealerships for the purchase price negotiated by Plaintiffs and the original buyer. (*Id.* at ¶ 4.6). As discussed below, moreover, because under Washington law a distributor is generally prohibited from directly or indirectly owning or operating a dealership, assigning its ROFR rights to a third party would be JLRNA's only option.

Plaintiffs and Go Auto, a Canadian company, allegedly signed a letter of intent ("LOI") on September 16, 2022, pursuant to which Go Auto tentatively agreed to acquire the Dealerships and related real estate assets for a combined goodwill purchase price of $75 million. (*Id.* at ¶ 4.9). Prior to executing the final APA and submitting it to JLRNA, Go Auto contacted third party Jaguar Land Rover Canada ("JLR Canada") to ask how JLRNA would respond. (*Id.* at ¶ 4.13). JLR Canada allegedly "urged Go Auto to delay executing the final agreements and meet with Joachim Eberhardt, President and Chief Executive Officer of JLRNA, personally before submitting a formal proposal to JLRNA." (*Id.* at ¶ 4.14). The proposed sale was thus delayed until Go Auto discussed the potential sale with JLRNA. (*Id.* at ¶ 4.16).

In May 2023, Plaintiffs allegedly met with JLRNA executives at the Dealerships (*id.* at ¶ 4.18), during which JLRNA allegedly informed Plaintiffs about its concerns with the Dealerships' low customer satisfaction index ("CSI") scores, stating that it would add another Point to the Seattle market if the CSI scores did not increase. (*Id.* at ¶ 4.19). Although Plaintiffs allege that they "committed to increasing the CSI scores" during this conversation (*id.* at ¶ 4.20), the AC now alleges that Mr. Eberhardt "did not specify the amount of increase in Plaintiffs' CSI scores that he expected to see." (*Id.*). Plaintiffs assert the CSI scores increased within a few months of the May

---

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 4

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

2023 meeting. (*See id.* at ¶ 4.21).

On July 20, 2023, during a conference, Go Auto's CEO Jason Smith allegedly met with Mr. Eberhardt. (*Id.* at ¶ 4.23). During their conversation, Mr. Smith allegedly asked whether JLRNA would support Go Auto's entrance into the U.S. JLR market and its potential purchase of the Dealerships. (*Id.*). Mr. Eberhardt allegedly stated that JLRNA would welcome Go Auto's entrance into the U.S. market, and support Go Auto's purchase of the Dealerships. (*Id.*). Mr. Eberhardt then purportedly told Mr. Smith that "Go Auto should be aware that an additional point was going into the Seattle market." (*Id.*). "Mr. Smith asked whether Go Auto could apply for the new point rather than purchasing the [Dealerships]," to which Mr. Eberhardt responded that "was not possible because the point had already been awarded, and if the award had not been formally approved yet it would be shortly." (*Id.*). The AC, however, which includes no new factual details about this conversation, adds the conclusory and self-serving allegation that "Mr. Eberhardt's statement was false when made, and he knew it was false." (*Id.*).

On August 10, 2023, Go Auto allegedly repeated Mr. Eberhardt's purported statement to Plaintiffs, citing the alleged new Point as justification for a revised goodwill offer of $50 million, reflecting a reduction of $25 million. (*Id.* at ¶ 4.24). The AC changes the description of this interaction. Whereas the OC asserted that Go Auto claimed the price reduction was justified by the "***potential*** new point" (*see* Dkt. #1 at ¶ 4.26 (emphasis added)), the AC now alleges that Go Auto cited the "***forthcoming*** new point" as justification for the price reduction. (Dkt. #23 at ¶ 4.24 (emphasis added)).

Plaintiffs allege that Mr. Stopnitzky, their broker, agreed that a new dealership justified a reduction in price, and that they "agreed to move forward with Go Auto at the reduced goodwill price of $50 million." (*Id.* at ¶ 4.25). Plaintiffs and Go Auto thereafter executed the APA on August 30, 2023, along with other contracts for the sale of the underlying real estate, sending the same to JLRNA for approval on September 7, 2023. (*Id.* at ¶ 4.26). On October 20, 2023, JLRNA informed Plaintiffs that the approval process was nearly complete, pending background checks and funding

---

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 5

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

verification. (*Id.* at ¶ 4.27).

On October 27, 2023, JLR Canada allegedly informed Go Auto, *inter alia*, that "no new point was being added to the Seattle market." (*Id.* at ¶ 4.28).

On November 14, 2023, JLRNA "provided notice that it would be exercising its ROFR on the entire transaction, with purchase rights for both dealerships assigned to [third party] Fields." (*Id.* at ¶ 4.30). On December 7, 2023, Plaintiffs and Fields executed a purchase agreement for the Dealerships, and on January 8, 2024, closed the sale for a combined goodwill purchase price of $51.5 million. (*Id.* at ¶¶ 4.32, 4.33). Plaintiffs allege that following this exercise of its ROFR, JLRNA "revealed that there was no new point being added to the Seattle market." (*Id.* at ¶ 5.8).

Based on these allegations, Plaintiffs bring claims sounding in contract and tort. The gravamen of each claim is that JLRNA's purported statement to Go Auto was (a) false (*see, e.g.*, *id.* at ¶¶ 4.23, 5.9, 6.5, 7.4, 8.3) and (b) intended to induce Go Auto to seek a reduction in the purchase price. (*See, e.g.*, *id.* at ¶¶ 5.5, 6.7, 7.5, 8.3).

## B.    Washington's Motor Vehicle Franchise Laws

Washington's motor vehicle franchise laws govern nearly every aspect of a manufacturer/distributor and dealer relationship. Like the Dealer Agreements, Washington law provides that a distributor (*e.g.*, JLRNA) can reasonably withhold its consent "to the sale, transfer, or exchange" of a dealership. *See* Wash. Rev. Code § 46.96.200. They also govern, *inter alia*, the standards a distributor may apply to select dealer candidates, the information that a potential buyer is obligated to provide to a distributor, as well as the procedures for a distributor's ultimate rejection of a proposed sale. *See id.*

Washington law also allows distributors to exercise a contractual ROFR. *See, e.g.*, Wash. Rev. Code § 46.96.220(1). Washington law, however, also generally prohibits distributors from competing with a dealer by either acting in the capacity of a dealer or owning, operating, or controlling a dealership. Wash. Rev. Code § 46.96.185(1)(g), 3(b), (d), (e). Consequently, distributors will assign their ROFR rights and payment obligations to a third party.

---

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

Notwithstanding the award of a new Point, the actual establishment (*i.e.*, addition or opening) of a new Point (*i.e.*, dealership) faces numerous regulatory hurdles. If a distributor intends to add a new Point within the "relevant market area" of an existing dealer (a radius of 7 to 20 miles from the location of the existing dealer depending on population), it must provide notice to such existing dealer (Wash. Rev. Code § 46.96.140). That dealer may file a formal protest with the state motor vehicle department, which automatically stays the addition of the new dealership and entitles the dealer to a hearing on the matter. *See* Wash. Rev. Code § 46.96.150. During that hearing, an administrative law judge ("ALJ") will examine twelve (12) enumerated factors to decide whether the distributor has met its burden of establishing good cause for the opening of the new dealership. *See* Wash. Rev. Code §§ 46.96.150, 46.96.160, 46.96.170. Unless the ALJ finds that at least nine (9) of the twelve (12) factors weigh in the distributor's favor, the proposed dealership will be prohibited. *See* Wash. Rev. Code § 46.96.160.

## III.   LEGAL STANDARD

A dismissal under Fed. R. Civ. P. 12(b)(6) "may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Ward v. Bank of America, N.A.*, No. C22-5252 BHS, 2022 WL 4534430, at *3 (W.D. Wash. Sept. 28, 2022). A complaint must therefore "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Accordingly, when a complaint alleges facts that admit an "obvious alternative explanation" for the defendant's conduct, it must be dismissed in the absence of additional allegations of "factual content to 'nudg[e]' [the] claim … 'across the line from conceivable to plausible.'" *Id.* at 682–83 (internal citations omitted).

The Court, moreover, is "not 'required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Bastidas v. Good*

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 7

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

*Samaritan Hosp. LP*, 774 F. App'x 361, 363 (9th Cir. 2019) (unpublished) (citation omitted). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Further, Fed. R. Civ. P. 9(b) requires that, when fraud is alleged, "a party must state with particularity the circumstances constituting fraud[.]" Thus, a plaintiff alleging fraud must "set forth more than the neutral facts necessary to identify the transaction." *Miller v. Amazon.com, Inc.*, No. 21-CV-204-BJR, 2024 WL 4554410, at *3 (W.D. Wash. Oct. 23, 2024) (quotations omitted). In other words, allegations of fraud "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (quotations omitted).

## IV.    ARGUMENT

JLRNA will first address Plaintiffs' fraud and negligent misrepresentation claims as they form the basis for Plaintiffs' other claims.

### A.    Plaintiffs Fail to State a Claim for Fraud.

Under Washington law, a fraud claim requires the plaintiff to plead the following elements: (1) representation of an existing fact, (2) materiality of the representation, (3) falsity, (4) the speaker's knowledge of its falsity, (5) the intent of the speaker that the representation be acted upon by plaintiff, (6) plaintiff's ignorance of the representation's falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely on the representation, and (9) damages suffered by the plaintiff. *Brummett v. Washington's Lottery*, 171 Wash.App. 664, 675 (2012).

Preliminarily, a claim for relief must include a "short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). The purpose of this rule is to provide the defendant with fair notice of what the claim is and the grounds upon which the claim is based, and not require opposing counsel and the court to search for actionable claims. *See In re Metropolitan Securities Litigation*, 532 F.Supp.2d 1260, 1277 (E.D. Wash. 2007). Given, as discussed below, the internal inconsistencies in the AC, however, it is not clear whether the fraud

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 8

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

claim is based on the alleged representation that a new Point had been awarded or on the potential

opening of a new Point.

In the actual fraud claim (Dkt. #23 at ¶¶ 6.1 to 6.11), Plaintiffs allege that JLRNA represented to Go Auto that it "had awarded or approved the award of a new point in the Seattle market" (*id.* at ¶ 6.3), and that such award "was material because it lowered the value of the Dealerships and thus justified lowering the purchase price of the Dealerships" (*id.* at ¶ 6.4). But the AC further alleges that Go Auto cited the "forthcoming" new point (described in the OC as the "potential" new point) as justification for the price reduction. (*Id.* at ¶ 4.24; Dkt. #1 at ¶ 4.26; Dkt. #21 at 13-15 ). The AC also alleges that Mr. Monjazeb's broker agreed that "a new point justified a reduction in purchase price." (*Id.* at ¶ 4.25). Accordingly, there is a disconnect between the alleged representation (that JLRNA had awarded or approved the award of a new point) and the purported justification for the price reduction (the opening of a new dealership in the future). They are not the same, as the award of a Point does not guarantee the opening of a dealership in the future. Either way, Plaintiffs have failed to plead a representation of an existing fact.

### 1.    Plaintiffs fail to allege that JLRNA made a representation of an existing fact.

Under Washington law, "a representation that something will be done in the future," such as the addition of a new dealership, "from its nature cannot be true or false at the time it was made," and it is thus not actionable. *See, e.g.*, *Seattle Pac. Indus., Inc.*, 2007 WL 397450, at *3. In *Seattle Pac.*, the Western District of Washington granted the plaintiff's motion to dismiss the fraud claim in the defendant's counterclaim on the basis that the alleged misrepresentations constituted a promise or prediction of future performance, not of an existing fact. *Id.* at *4. The court relied on the Washington Supreme Court's test in *Nyquist v. Foster*, 44 Wash.2d 465, 470, 471 (1954), for distinguishing between a future event and an existing fact:

> Where the fulfillment or satisfaction of the thing represented depends upon a promised performance of a future act, or upon the occurrence of a future event, or upon particular future use, or future requirements of the representee, then the representation is not of an

> existing fact… On the other hand, a statement is one of existing fact, if a quality is asserted which inheres in the article so that, at the time the representation is made, the quality may be said to exist independently of future acts or performance of the one making the representation, independently of other particular occurrences in the future, and independently of particular future uses or future requirements of the buyer.

*Seattle Pac. Indus., Inc.*, 2007 WL 397450, at * 3-4 (internal quotations and citations omitted).

Here, although the alleged representation is that JLRNA had awarded or approved the award of a new Point, the justification for the price reduction, both from the point of view of Go Auto and Plaintiffs, was the opening of a new dealership in the future.

First, it is important to note that in the OC, Plaintiffs alleged that Go Auto cited the "***potential*** new point" as justification for the price reduction. (*See* Dkt. #1 at ¶ 4.26; Dkt. #21 at 13-15). The AC, however, substitutes the word "***forthcoming***" for the word "**potential**" to describe the opening of the new Point (*See* Dkt. #23 at ¶ 4.24). This attempt to characterize the addition of the new Point as a representation of fact rather than of a future event is misplaced. Like "potential," "forthcoming" describes a future event, and even if, *arguendo*, it did not, the AC does not alter or add any new factual allegations regarding the alleged conversation or Go Auto's report of the conversation to Plaintiffs to transform it into a representation of an existing fact.

Second, even if, *arguendo*, the basis of the fraud claim is the representation that an award had been made, as opposed to the opening of a dealership in the future, there is a difference between the award (or approval of an award) of a new Point and the actual addition of a new Point in the market (*i.e.*, opening a new dealership in Seattle). Indeed, under Washington law, the award of a new Point is simply a preliminary step in the long, complicated, and uncertain process of opening an actual operating dealership. Once a distributor awards a point to a candidate, there are still a number of statutory and practical requirements that must be fulfilled before any dealership comes into existence, including issuing notices to existing dealers within a certain distance of the proposed dealership, which permits those to dealers to file a protest, stay the action, and present evidence at a good cause hearing. *See, e.g.*, Wash. Rev. Code §§ 46.96.140, 46.96.150, 46.96.160. Many proposed dealerships meet their ultimate end via such protests. And even those that do not

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 10

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

still face a long, uphill battle for survival because, even once the numerous statutory hurdles are cleared, numerous costly and complicated practical tasks remain before any dealership can begin operations (*e.g.*, the dealer candidate must locate and acquire property, construct or renovate facilities, apply for and receive dealer licensing, etc.). These processes can literally take years, and there is always a possibility that the contemplated business deal will simply fall through for any number of reasons, just like in any other industry.

In other words, the award of a Point does *not* necessarily result in the physical establishment of an operating dealership. Given that Go Auto and Plaintiffs' broker both cited the opening of a new dealership (and not the award itself) as justification for the purchase price reduction, the fraud claim necessarily concerns not the award of a new Point, but the potential opening of a new dealership in the future. Under *Nyquist*, that is not actionable.

In any event, given that the alleged justification for the price reduction was not the representation that a new Point had been awarded, but the opening of a dealership in the future, the alleged representation could not have resulted in any injury to Plaintiffs.

### 2.    Plaintiffs fail to plead the element of intent.

Because Plaintiffs allege that JLRNA made a statement to Go Auto (not to Plaintiffs), which Go Auto later repeated to Plaintiffs (*see* Dkt. #23 at ¶ 4.24), Plaintiffs must plead that JLRNA made a false representation to Go Auto with the intent or reasonable expectation that it would be repeated to Plaintiffs *and* that it would influence Plaintiffs' conduct. *See, e.g.*, *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wash. 2d 107, 167–68 (1988). *See also*, Restatement (Second) of Torts § 533 (stating that where a statement is made to a third party, and not to the plaintiff, liability only arises where "the [statement] maker intends or has reason to expect that [the statement's] terms will be repeated or its substance communicated to the [plaintiff], and that it will influence his conduct in the transaction or type of transaction involved.").

As noted in the MTDOC, the OC was deficient because it alleged that JLRNA intended to influence **Go Auto's** behavior, not **Plaintiffs'** behavior. (*See* Dkt. #21 at 16 (quoting Dkt. #1 at ¶

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 11

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

6.7 ("JLRNA made this representation to Go Auto, intending for Go Auto to act upon this knowledge by lowering the purchase price"))). Knowing that this omission was fatal to their fraud claim, Plaintiffs now allege in the AC that "Mr. Eberhardt of JLRNA made this representation to Go Auto, with the knowledge and intent that Go Auto would communicate it to Plaintiffs" and that JLRNA "knew and intended that Go Auto would use the new point in the contract negotiation with Plaintiffs to justify a reduction in the purchase price." (Dkt. #23 at ¶ 6.7). Although Plaintiffs now allege that JLRNA intended for Go Auto to repeat the purported representation to Plaintiffs, they have still failed to allege that JLRNA intended to influence Plaintiffs' conduct.

First, alleging that JLRNA intended for Go Auto to use the new Point in its contract negotiations with Plaintiffs to justify a price reduction is substantively different than alleging that JLRNA intended for **Plaintiffs** to *accept* such a reduction based on the new Point. To the contrary, it is no different than alleging that JLRNA intended to influence Go Auto's behavior.

Second, and in any event, even if, *arguendo*, the AC had alleged that JLRNA intended to influence Plaintiffs' conduct (it does not), the AC fails to state any new facts beyond those alleged in the OC that would support such an allegation, thereby rendering it conclusory and implausible. *See, e.g.*, *Morales v. City and Cnty. of San Francisco*, 603 F. Supp. 3d 841, 846 (N.D. Cal. 2022); *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 372 (D.D.C. 2018); *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y Sept. 24, 2008), aff'd, 356 F. App'x 535 (2d Cir. 2009). Indeed, the AC fails to set forth sufficient facts to plausibly allege that JLRNA intended to influence *anyone*, much less Plaintiffs, to reduce the goodwill purchase price of the Dealerships.

- The AC does not allege that JLRNA was in possession of the LOI or otherwise knew about the $75 million goodwill purchase price at any time. As alleged in the AC, the only documents submitted to JLRNA were the APA and the real estate contracts, which reflected the reduced purchase price but were provided to JLRNA almost two months after the purported representation. The allegation that JLRNA intended to induce a reduction in

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 12

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

the goodwill purchase price, when it did not even know what the contemplated price was, is thus implausible.

- The AC does not include any other allegations to support JLRNA's intent to reduce the purchase price—whether in July 2023 or at any other point. To the contrary, the AC alleges that JLRNA exercised its ROFR and assigned its rights thereunder to Fields. Consequently, it was Fields, not JLRNA, which paid the purchase price for the Dealerships. (*See, e.g.*, Dkt. #23 at ¶ 4.30 ("On November 14, 2023, JLRNA provided notice that it would be exercising its ROFR on the entire transaction, with purchase rights for both dealerships assigned to Fields"). Indeed, there are no allegations that JLRNA ever considered exercising the ROFR on its own behalf (and, under Washington law, it could not as a practical matter), and as such, any allegation that JLRNA sought to reduce the purchase price for the Dealerships is speculative and implausible.

In response to the MTDOC (*see* Dkt. #21 at 16-17), Plaintiffs now allege that even though JLRNA was not aware of the purchase price, a reduction in the purchase price would make it easier for JLRNA to exercise or assign its ROFR to prevent Go Auto from owning both Dealerships, or because of personal animus between Mr. Eberhardt and Mr. Monjazeb. (*See* Dkt. #23 at ¶ 6.7). These allegations, however, are purely speculative and thus not plausible, as they presume—both necessarily and incorrectly—that, without knowing the purchase price, JLRNA nonetheless believed that it would be difficult to exercise or assign its ROFR. But without knowing the purchase price, JLRNA would have had no reason believe that it would have any difficulties in exercising or assigning its ROFR. Nor is it plausible that JLRNA would expose itself to liability on the off chance that the unknown purchase price would have made finding a willing third party dealer candidate difficult.

Likewise, Plaintiffs fail to plead any facts that would support the existence of any personal animosity between Messrs.' Eberhardt and Monzajeb, rendering the allegation speculative and thus implausible. Even if the allegation were accepted as true for purposes of this motion, Mr.

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 13

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

Eberhardt would have had every incentive to *support* Go Auto's purchase of the Dealerships, which would result in the end of Mr. Monjazeb's tenure as a JLR Dealer. By artificially lowering the purchase price, Mr. Eberhardt would only have made it less likely that Plaintiffs would have accepted Go Auto's offer, which also would have prevented JLRNA from exercising its ROFR.

Plaintiffs' have thus failed to adequately plead intent. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

### 3.    Plaintiffs fail to allege justifiable reliance.

Washington law requires a plaintiff to "plead and prove that he *justifiably* relied on the defendants' misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (emphasis added). The AC must plead facts demonstrating that Plaintiffs' reliance on the purported representation was "reasonable under the surrounding circumstances." *See id.* at 762 (internal quotation omitted). *See also, e.g.*, *BP W. Coast Prods., LLC v. Shalabi*, No. C11-1341MJP, 2012 WL 2277843, at *5 (W.D. Wash. June 14, 2012) (dismissing fraud claims where pleadings demonstrated plaintiff could not have justifiably relied on purported misrepresentations).

Here, Plaintiffs allege that they were justified in relying on JLRNA's alleged statement because "it was made by JLRNA, which is a party to the Dealer Agreements" (Dkt. #23 at ¶ 6.10). For several reasons, this allegation is deficient. First, the AC alleges that Plaintiffs learned about JLRNA's alleged representation from Go Auto, not from JLRNA (either in writing or orally). (*See id.* at ¶ 4.24). Go Auto, however, was not a party to the Dealer Agreements, and it had a vested interest as the proposed purchaser to reduce the purchase price. As discussed above, however, JLRNA had no such interest. Indeed, JLRNA did not even know the initial purchase price and, in any event, it assigned its ROFR rights and payment obligations to Fields. Plaintiffs' reliance on Go Auto's rendition of its conversation with JLRNA was thus unreasonable and unjustifiable.

Second, unlike in the OC, Plaintiffs now allege in the AC that their reliance was reasonable because they "had no reason to think Mr. Smith [of Go Auto] was lying in communicating the

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 14

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

statements made by Mr. Eberhardt [of JLRNA] about the new point." (Dkt. #23 at ¶ 6.10). This allegation, however, is conclusory and not supported by the other allegations in the AC. As the proposed purchaser, Go Auto had a vested interest in reducing the purchase price, and Plaintiffs thus had a significant reason to at least suspect that Mr. Smith was not being truthful. At minimum, it is implausible that Plaintiffs would not reach out to JLRNA, the party with whom Plaintiffs had a long-standing business relationship (*id.* at ¶ 4.2), a party to the Dealer Agreements (*id.* at ¶ 6.10), the party that allegedly made the representation (to Go Auto), and the only party with the right to award and establish (subject to potential protest) a new Point. But the AC, like the OC before it, does not allege that Plaintiffs attempted to contact JLRNA to confirm the veracity of Go Auto's story before agreeing to immediately reduce the purchase price. Plaintiffs' reliance solely on the word of Go Auto regarding JLRNA's plans for the Seattle market was thus unreasonable and unjustified.

Third, as experienced and sophisticated motor vehicle dealers in Seattle (*id.* at ¶¶ 4.1, 4.2), Plaintiffs should be familiar with Washington's motor vehicle regulatory scheme. As discussed above, under Washington law, notwithstanding the award of a Point, if a distributor intends to open an additional Point in the relevant market area (a radius of 7 to 20 miles from the location of the existing dealer depending on population) of an existing JLR dealer, it must provide notice to such existing dealer. The dealer, moreover, may file a protest, which automatically stays the opening of the new dealership. *See* Wash. Rev. Code §§ 46.96.140, 46.96.150. Like the OC, however, the AC does not allege whether the location of the proposed new Point would be within the relevant market area of either of the Dealerships and thus subject to notice, protest, and the automatic stay (by Plaintiffs or by Go Auto after the sale closed). That Plaintiffs would reduce the purchase price of the Dealerships by $25 million in reliance on Go Auto's statement regarding JLRNA's intention to add a Point to some unspecified location in the Seattle market is therefore implausible.

Plaintiffs further plead that that their reliance was justified because JLRNA had

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

"previously threatened to add a new point to the Seattle market, and it was thus unsurprising to Plaintiffs that JLRNA had made that decision." (*Id.* at ¶ 6.10). This allegation, of a previous unconditional "threat" to add a new Point to the Seattle market, is belied by other allegations in the AC. Indeed, Plaintiffs allege that, in May 2023, JLRNA "threatened to add another point (dealership) to the Seattle market if [the Dealerships'] CSI scores did not increase." (*See id.* at ¶¶ 4.18, 4.19). Plaintiffs further allege, however, that the Dealerships' CSI scores *did* increase "within a few months." (*See id.* at ¶ 4.21). Given the alleged increase in the CSI scores, therefore, JLRNA would not have added a new Point on the basis of its alleged threat.

This argument was set forth in the MTDOC (*see* Dkt. #21 at 19), and in response, the AC now alleges that Mr. Eberhardt "did not specify the amount of increase in Plaintiffs' CSI scores that he expected to see" (Dkt. #23 at ¶ 4.19). But this new allegation makes it even *more* implausible that Plaintiffs would not contact JLRNA to verify Go Auto's story. Indeed, if Plaintiffs did not know whether their recent CSI score improvements had met JLRNA's minimum threshold, Plaintiffs would have contacted JLRNA to at least raise the issue. It is not plausible that Plaintiffs would have flatly accepted a $25 million loss based on the blind assumption that they had failed to sufficiently increase their CSI scores.

Accordingly, Plaintiffs' reliance on JLRNA's alleged representation to Go Auto based on JLRNA's alleged previous "threat" was not reasonable under the surrounding circumstances. The allegations in the AC thus do not satisfy the element of justifiable reliance.

### 4. Plaintiffs fail to allege falsity.

The fraud claim is also defective because it fails to plead facts sufficient to support the allegation that the alleged representation made by JLRNA to Go Auto was false when it was made and that JLRNA knew of its falsity. Per the MTDOC, the OC was deficient because it omitted any facts to support its bare bones allegation that "upon information and belief," "JLRNA did not have plans to award a new Point to the Seattle market" (Dkt. #1 at ¶ 6.5) at the time the alleged representation was made. The AC now makes the conclusory allegation that "Mr. Eberhardt's

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 16

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

statement was false when made, and he knew it was false" (Dkt. #23 at ¶ 4.23) and that "JLRNA had not awarded a new point or approved the award of a new point to the Seattle market" (Dkt. #23 at ¶ 6.5). Despite the change in language, the AC, like the OC, omits any facts that would support the element of falsity. *Seattle Pac. Indus., Inc.*, 2007 WL 397450, at *2 (noting that, under Rule 9(b), a plaintiff must state the circumstances indicating falseness or an explanation as to how an alleged statement or omission was false or misleading when made") (internal quotations and quotations omitted).

### 5.    Plaintiffs fail to allege materiality.

The AC fails to allege facts sufficient to establish that JLRNA's purported representation to Go Auto was material.  As noted above, on the one hand, Plaintiffs allege that the representation that JLRNA had awarded or approved the award of a new Point "was material because it lowered the value of the Dealerships and thus justified lowering the purchase price of the Dealerships." (Dkt. #23 at ¶¶ 6.3, 6.4). On the other hand, they allege that both Go Auto and Mr. Monjazeb's broker cited the addition of a new dealership as justification for the price reduction. (*Id.* at ¶¶ 4.24, 4.25). Either way, the representation was not material.

As discussed above, given the regulatory and economic hurdles involved, the award of a new Point would *not* justify an immediate $25 million price reduction. For example, under Washington law, if the proposed location of the new Point fell within either of the Dealerships' relevant market areas, Plaintiffs and/or Go Auto would have had protest rights, the exercise of which would (a) have been *far* less than $25 million, and (b) triggered an automatic stay of the opening of the new dealership, as well as a potential permanent prohibition of the same. Consequently, there would have been no reason to agree to an immediate $25 million price reduction.

On the other hand, to the extent JLRNA sought to open a dealership outside of the Dealerships' relevant market areas, Plaintiffs and/or Go Auto would not have had the ability to file protests. If that were the case, JLRNA had the right to award and open a Point at any time,

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 17

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

including after the sale of the two Dealerships, a factor for which Go Auto, as an experienced and sophisticated automobile dealership group, undoubtedly considered when agreeing to the initial goodwill purchase price of $75 million.[1]

Accordingly, the AC fails to allege that the alleged representation was material.

**B.      The Negligent Misrepresentation Claim Must Fail.**

Under Washington law, to establish a claim of negligent misrepresentation a plaintiff must prove by clear, cogent, and convincing evidence that (1) defendant supplied plaintiff with false information as to an existing fact, (2) defendant knew or should have known that the information was supplied to guide plaintiff in the transaction, (3) defendant was negligent in obtaining or communicating the false information, (4) plaintiff relied on the false information, (5) plaintiff's reliance was reasonable, and (6) the false information proximately caused plaintiff's damages. *See W. Challenger, LLC v. DNV GL Group*, No. C16-0195-JCC, 2017 WL 6611701, at *4 (W.D. Wash. Dec. 27, 2017), *aff'd sub nom. W. Challenger, LLC v. Seymour*, 765 F. App'x 369 (9th Cir. 2019).

Like a fraud claim, a negligent misrepresentation claim requires sufficient factual allegations to plausibly show that JLRNA provided information about an existing fact, and a statement about a future event will not support a negligent misrepresentation claim. *See Graham-Bingham Irrevocable Tr. v. John Hancock Life Ins. Co. USA*, 827 F.Supp.2d 1275, 1285 (W.D. Wash. 2011) ("Statements about future performance are not representations of existing fact and generally will not support a claim of fraud or misrepresentation"). Like their fraud claim, Plaintiffs' negligent misrepresentation claim alleges that JLRNA's purported representation concerned a future event, not a statement about an existing fact, and it should thus also be dismissed on this basis. (*See supra* at § IV.A.1).

---

[1] The AC, like the OC before it, is silent on whether Plaintiffs informed Go Auto that JLRNA had stated it would add another dealership to the Seattle market if the Dealerships' CSI scores did not improve. If Plaintiffs did not, they apparently did not consider the fact to be material. If Plaintiffs did, Go Auto's initial bid of $75 million surely reflected this fact. Notably, Plaintiffs neglected to add any information on this front even after being alerted to the omission by JLRNA's original Motion to Dismiss. (*See* Dkt. #21 at 20 fn. 2).

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 18

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

Further, and as discussed above, just as Plaintiffs' amended fraud claim only alleges that JLRNA intended for *Go Auto's* behavior to be influenced by the purported representation (*see supra* at § IV.A.2), Plaintiffs' amended negligent misrepresentation claim merely alleges that "JLRNA knew or should have known that Go Auto would use the new point in the contract negotiation with Plaintiffs to justify a reduction in the purchase price." (Dkt. #23 at ¶ 7.5). This is not the same as alleging that JLRNA knew or should have known that Plaintiffs would have considered accepting a reduced price based purely on Go Auto's statement, and the AC therefore fails to allege that JLRNA "knew or should have known that the information was supplied to guide Plaintiff in the transaction." *W. Challenger, LLC*, 2017 WL 6611701, at *4. Moreover, even if Plaintiffs had included such allegations here (and they did not), any such allegations would again not be plausible given JLRNA's ignorance of, and disinterest in, the Dealerships' initial goodwill price. (*See supra* at § IV.A.2).

Similarly, just as Plaintiffs failed to plausibly allege reasonable reliance with respect to their fraud claim (*see supra* at § IV.A.4), Plaintiffs fare no better with respect to their negligent misrepresentation claim. While Plaintiffs again offer the conclusory assertions that their "reliance was reasonable because JLRNA was a party to the Dealer Agreements and an interested party in the sale of the Dealerships" and that "Plaintiffs had no reason to think Mr. Smith was lying in communicating the statements made by Mr. Eberhardt about the new point" (Dkt. #23 at ¶ 7.9), Plaintiffs' factual allegations demonstrate that it was decidedly unreasonable for Plaintiffs to unquestionably accept Go Auto's assertion. Again, Plaintiffs possessed information that contradicted Go Auto's statement (*see supra* at § IV.A.4), Go Auto had a vested interest in lowering the purchase price (*see id.*), and there is no indication that Plaintiffs explored any other potential options prior to accepting the $25 million price reduction. (*See id.*). Plaintiffs' AC therefore also fails to allege a claim for negligent misrepresentation.

## C.    The Tortious Interference Claim Must Fail.

The elements of a tortious interference with business expectancy claim are: "(1) the

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 19

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage". *See, e.g., T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F.Supp.3d 1184, 1194 (W.D. Wash. 2015). For several reasons, Plaintiffs' claim must fail.

Here, the gravamen of Plaintiffs' claim is that JLRNA "had knowledge of the deal [*i.e.*, the LOI] because Go Auto informed JLRNA of its intent to purchase the Dealerships; [] JLRNA intentionally misled Plaintiffs and Go Auto that a new point would be added to the Seattle market, which caused Plaintiffs to lose the LOI contract expectancy of $75 million for the sale of the Dealerships and then JLRNA exercised its right of first refusal at the reduced price; [and] JLRNA used improper means (fraudulent representation) and an improper purpose (to artificially depress the value of Plaintiffs' dealerships) to obtain a reduced purchase price[.]" (Dkt. #23 at ¶ 8.3). Notably, while the OC alleged that the underlying "deal" was the finalized asset purchase agreements (*see* Dkt. #1 at ¶ 8.3), the OC now alleges that the LOI was the underlying "deal." This change is material, and it was made in response to the MTDOC, which noted that Plaintiffs had failed to adequately allege tortious interference with a business expectancy (*see* Dkt. #21 at 22-24). However, the AC's allegations, which are inconsistent with those in the OC, are inherently implausible. *See, e.g., Morales*, 603 F. Supp. 3d at 846. But even if this inconsistency is ignored, the AC does not plead facts to make these allegations plausible.

First, as discussed above, Plaintiffs allege that JLRNA interfered with "the LOI contract expectancy of $75 million for the sale of the Dealerships," but they have failed to plead that JLRNA had knowledge of the $75 million purchase price at any time. Plaintiffs do not allege that Plaintiffs or Go Auto ever informed JLRNA of this purchase price, nor do Plaintiffs allege that JLRNA ever received a copy of the LOI. Without knowledge of the $75 million purchase price, JLRNA cannot not have interfered with "the LOI contract expectancy of $75 million for the sale

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 20

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

of the Dealerships."

Second, as also discussed above, Plaintiffs have failed to plead any facts to support the allegation that JLRNA intended to cause or had any reason to cause a reduction in the purchase price. (*See supra* at § IV.A.2). Third, Plaintiffs have not alleged that JLRNA's purported representation to Go Auto in July 2023 induced or caused a breach or termination of the proposed sale. In fact, Plaintiffs do not allege any breach on the part of Go Auto. To the contrary, Plaintiffs allege that Plaintiffs' relationship with Go Auto continued even after JLRNA purportedly made the July 2023 representation to Go Auto. (*See, e.g.*, Dkt. #23 at ¶ 4.30) (indicating that Plaintiffs' relationship with Go Auto continuously existed until JLRNA exercised its ROFR in November 2023).

Fourth, the AC does not allege that JLRNA's exercise and assignment of the ROFR caused Go Auto to breach the LOI or APAs. Further, the exercise of the ROFR was authorized by the Dealer Agreements and Washington law and the AC fails to plead any facts to support the allegation that JLRNA exercised the ROFR for an improper purpose or in bad faith. JLRNA's exercise of the ROFR, therefore, is not actionable. *See, e.g.*, *Kane v. City of Bainbridge Island*, 866 F.Supp.2d 1254, 1265 (W.D. Wash. 2011) ("Exercising in good faith one's legal interests is not improper interference.") (citations omitted). In any event, the exercise of the ROFR did not result in any reduction of the goodwill purchase price, as it was exercised well after Plaintiffs and Go Auto had executed the APA reflecting the reduced purchase price. Plaintiffs, moreover, suffered no harm from the exercise of the ROFR, as they received the full amount of goodwill that would have been paid by Go Auto.

Finally, as also discussed above, Plaintiffs have failed to allege that JLRNA's discussion with Go Auto in July 2023 was either a fraudulent or negligent misrepresentation. (*See supra* at §§ IV.A, IV.B). Thus, the AC fails to state facts sufficient to allege that JLRNA interfered for an improper purpose or used improper means. (*See, e.g.*, Dkt. #23 at 8.3).

Accordingly, Plaintiffs claim for tortious interference must fail.

**D.      The Breach of the Implied Covenant of Good Faith and Fair Dealing Fails.**

Under Washington law, "'[t]here is in every contract an implied duty of good faith and fair dealing' that 'obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.'" *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F.Supp.3d 1166, 1173-1174 (W.D. Wash. 2014) (citations omitted). At the same time, however, "'[t]he implied covenant of good faith and fair dealing cannot add or contradict express contract terms and does not impose a free-floating obligation of good faith on the parties. Instead, the duty of good faith and fair dealing arises only in connection with terms agreed to by the parties.'" *Id.*

The OC, without identifying any contract, alleged that the covenant was breached because "JLRNA induced the parties into reducing the purchase price by misrepresenting to Plaintiffs and Go Auto that a new point would be added to the Seattle market," and thereafter exercising its contractual ROFR at the reduced price (*see* Dkt. #1 at ¶ 5.8). In the AC, however, the phrase, "by misrepresenting … that a new point would be added to the Seattle market" is omitted. (*See* Dkt. #23 at ¶¶ 5.1-5.10). By contrast, the AC alleges that JLRNA interfered with the Dealer Agreements by "informing Go Auto that it had awarded or approved the award of a new point in the Seattle market" and that "JLRNA knew that this information would affect the price of the Dealerships and be reported to Plaintiffs." (*Id.* at ¶ 5.5). The AC further alleges that JLRNA breached the covenant by "conveying false information about the new point and thereby inducing Go Auto and Plaintiffs to reduce the sale price of the Dealerships, and then exercising its contractual right of first refusal in bad faith." (*Id.* at ¶ 5.9).

The allegations of the AC are thus inconsistent with those of the OC. While the OC does not identify any contract and alleges that the representation that a new Point would be added caused the reduction in the purchase price, the AC identifies the Dealer Agreements as the operative contracts and alleges that the award itself "would affect the price of the Dealerships and be reported to Plaintiffs." (*See id.* at ¶ 5.5). This material inconsistency, along with the other inconsistencies discussed above, renders the allegations implausible. *See Morales*, 603 F. Supp. at 846; *Golden*,

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 22

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

319 F. Supp. 3d at 372; *Colliton*, 2008 WL 4386764, at *6. Even if it did not, Plaintiffs amended claim would fail.

First, JLRNA's alleged representation to Go Auto in July 2023 did not trigger any contractual rights under the Dealer Agreements. The submission of the APA to JLRNA in September 2023 triggered JLRNA's obligation to review and either approve or disapprove the proposed sale. By that time, however, the purchase price had already been reduced and there is no allegation that JLRNA breached the duty of good faith in connection with this contract term.

Second, JLRNA's alleged representation to Go Auto does not constitute fraud or negligent misrepresentation (*see supra* at § IV.A, IV.B) and thus JLRNA's exercise of its contractual and statutory ROFR was not in bad faith.

Finally, the exercise of the ROFR could not have caused any damages to Plaintiffs. As alleged in the AC, the ROFR was not exercised until November 2023, months after the price reduction. Further, Fields, the party to whom JLRNA assigned its ROFR rights, paid the purchase price as negotiated by Plaintiffs and Go Auto.

Accordingly, this claim should be dismissed.

## V.    CONCLUSION

For the above reasons, the AC fails to state any claim against JLRNA and should be dismissed without leave to amend.

I certify that this memorandum contains 8294 words, in compliance with the Local Civil Rules.

DATED this 25 day of February 2025.        Respectfully submitted,

*/s/ Hunter K. Ahern*
Hunter K. Ahern (Bar No. 54489)
SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
T: 206.344.7600 F: 206.344.3113
hahern@shb.com

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 23

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

Colm Moran (*pro hac vice*)
Robert Feyder (*pro hac vice*)
Adam Lauridsen (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
T: 424.285.8330 F: 424.204.9093
cmoran@shb.com
rfeyder@shb.com
alauridsen@shb.com

**Attorneys for Defendant**

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 24

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600

1

2

## <u>CERTIFICATE OF SERVICE</u>

I certify, under penalty of perjury under the laws of the State of Washington, that on February 25, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All parties, if any, shall be served in accordance with the Federal Rules of Civil Procedure.

*/s/ Deborah Hillburn*

Deborah Hillburn, Legal Assistant

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S MOTION TO DISMISS AMND. COMPL.
CASE NO. 2:24-cv-01903-RAJ - Page - 25

SHOOK, HARDY & BACON L.L.P.
701 Fifth Ave., Suite 6800
Seattle, WA 98104
Telephone: 206.344.7600