HONORABLE RICHARD A. JONES

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
9                                  AT SEATTLE

10    ARASTOU MONJAZEB; J&L                    Case No.  2:24-cv-01903-RAJ
      HOLDINGS, INC.; and JAGUAR-
11    LAND ROVER BELLEVUE, INC.,               ORDER

12                     Plaintiffs,

13         v.

14    JAGUAR LAND ROVER NORTH
      AMERICA, LLC,
15
                       Defendant.
16

17                        **I.     INTRODUCTION**

18         THIS MATTER comes before the Court on Defendant Jaguar Land Rover North

19   America, LLC's ("JLRNA") motion to dismiss, dkt. # 25.  The Court has reviewed the

20   motion, the submissions in support of and in opposition to the motion, the balance of the

21   record, and the governing law.  For the reasons set forth below, the Court **DENIES** the

22   motion to dismiss.

23                         **II.     BACKGROUND**

24         Defendant JLRNA is the exclusive authorized distributor of Jaguar Land Rover

25   cars and other products in North America.  Dkt. # 23 ¶ 2.4.  Plaintiff Arastou Monjazeb,

26

ORDER - 1

1  through his corporations, Plaintiffs J&L Holdings, Inc. and Jaguar-Land Rover Bellevue,

2  Inc., owned two authorized Jaguar Land Rover dealerships located in Lynnwood and

3  Bellevue, Washington.  *Id.* ¶¶ 1.1–1.2.  Under dealership agreements with JLRNA,

4  Plaintiffs were required to submit a proposal to JLRNA in the event of a contemplated

5  sale of all or substantially all of the dealerships' assets.  *Id.* ¶ 4.3.  JLRNA would then

6  have the right of first refusal to purchase the dealerships on the same terms and conditions

7  reflected in the proposal.  *Id.* ¶ 4.4.  JLRNA also had the right to assign its right of first

8  refusal to a third party.  *Id.* ¶ 4.6.

9          In May 2022, Mr. Monjazeb began negotiating a sale of the dealerships to Go

10  Auto Dealership, Inc. ("Go Auto").  *Id.* ¶ 4.7.  In September 2022, Plaintiffs and Go Auto

11  signed a letter of intent that provided for a combined goodwill purchase price of $75

12  million for the two dealerships.  *Id.* ¶ 4.9.

13          In May 2023, JLRNA executives, including JLRNA's president and CEO Mr.

14  Eberhardt, visited Mr. Monjazeb's Lynnwood and Bellevue dealerships.  *Id.* ¶ 4.18.

15  During the meeting, Mr. Eberhardt expressed concern about the dealerships' low

16  customer satisfaction index scores and threatened to add another dealership—referred by

17  the parties as a "point"—to the Seattle market if the dealerships' scores did not increase.

18  *Id.* ¶ 4.19.

19          In July 2023, Go Auto's CEO, Mr. Smith, met with Mr. Eberhardt while they were

20  both attending a conference.  *Id.* ¶ 4.23.  During that meeting, Mr. Smith and Mr.

21  Eberhardt discussed Go Auto's potential acquisition of Plaintiffs' dealerships.  *Id.*  Mr.

22  Eberhardt told Mr. Smith that "Go Auto should be aware that an additional point was

23  going into the Seattle market."  *Id.* Mr. Smith asked if Go Auto could apply for the new

24  point.  *Id.*  Mr. Eberhardt responded "that was not possible because the point had already

25  been awarded, and if the award had not been formally approved yet it would be shortly."

26

ORDER - 2

1    *Id.* Plaintiffs allege "Mr. Eberhardt's statement was false when made, and he knew it
2    was false." *Id.*

3    On August 10, 2023, Mr. Smith met Mr. Monjazeb in person and described his
4    conversation with Mr. Eberhardt. *Id.* ¶ 4.24. Go Auto revised its offer and reduced the
5    goodwill purchase price for the dealerships from $75 million to $50 million, citing "the
6    forthcoming new point as justification for the reduction." *Id.* Mr. Monjazeb consulted
7    with his broker, who "agreed that a new point justified a reduction in purchase price."
8    *Id.* ¶ 4.25. Mr. Monjazeb then agreed to move forward with Go Auto at the reduced
9    goodwill purchase price of $50 million. *Id.*

10   On August 30, 2023, Plaintiffs and Go Auto executed an asset purchase agreement
11   for the dealerships. *Id.* ¶ 4.26. Plaintiffs submitted the agreement to JLRNA for
12   approval. *Id.* In October 2023, Go Auto learned from JLRNA's Canadian affiliate that
13   no new point was being added to the Seattle market. *Id.* ¶ 4.28. Shortly after, JLRNA
14   informed Go Auto that it decided to exercise its right of first refusal to select a different
15   buyer for the Lynnwood dealership in order to provide competition between the Bellevue
16   and Lynnwood locations. *Id.* ¶ 4.29. Go Auto refused, telling JLRNA that it would only
17   agree to purchase both dealerships. *Id.*

18   In November 2023, JLRNA provided notice that it would exercise its right of first
19   refusal on the entire transaction, and that it would assign the right to purchase both
20   dealerships to a third party, Fields PAG, Inc. ("Fields"). *Id.* ¶ 4.30. In a subsequent
21   conversation, JLRNA told Mr. Monjazeb that Fields agreed to divest itself of the
22   Lynnwood dealership after acquiring it, so that JLRNA could achieve its goal of separate

23

24

25

26

ORDER - 3

1  ownership of the two dealerships. *Id.* In January 2024, Plaintiffs sold the dealerships to

2  Fields at the lower $50 million price. *Id.* ¶ 4.33.[1]

### III.    LEGAL STANDARD

4  To survive a motion to dismiss, a plaintiff must point to factual allegations in the

5  complaint that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

6  *Twombly*, 550 U.S. 544, 570 (2007). In analyzing a motion to dismiss, courts assume the

7  truth of the complaint's factual allegations and credit all reasonable inferences arising

8  from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). However,

9  it "need not accept as true conclusory allegations that are contradicted by documents

10  referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

11  1025, 1031 (9th Cir. 2008).

### IV.    DISCUSSION

13  #### A.    Fraudulent Misrepresentation

14  Under Washington law, the nine elements of fraud are: "(1) a representation of

15  existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity,

16  (5) the speaker's intent that it be acted upon by the person to whom it is made, (6)

17  ignorance of its falsity on the part of the person to whom the representation is addressed,

18  (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and

19  (9) consequent damage." *Elcon Const., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash.

20  2012). JLRNA argues Plaintiffs fail to allege representation of an existing fact,

21  materiality, falsity, intent, and justifiable reliance. Dkt. # 25 at 12–22. For the reasons

22  discussed below, the Court finds Plaintiffs adequately plead each of these elements.

23

24  ―――――――――――――

25  [1] The final goodwill purchase price included a modest price increase that is not relevant
to this motion. *Id.*

26

ORDER - 4

1

### 1.    Representation of an Existing Fact

2       "A promise of future performance is not a representation of an existing fact and

3 will not support a fraud claim." *West Coast, Inc. v. Snohomish County*, 48 P.3d 997,

4 1000 (Wash. Ct. App. 2002).    JLRNA argues Plaintiffs' fraud claim is based on a

5 representation about the *future* opening of a dealership, rather than an existing fact, and

6 therefore is not actionable.  Dkt. # 25 at 13–15.  JLRNA notes the process for actually

7 opening a dealership is complicated and uncertain, including a potential protest process

8 set out under Washington statute.  *Id.*  Plaintiffs argue their fraud claim is based on Mr.

9 Eberhardt's statement that the point had already been awarded or would be shortly, which

10 is a statement of existing fact.  Dkt. # 26 at 13–15.  The Court agrees with Plaintiffs.

11      Plaintiffs' fraud claim is based on Mr. Eberhardt's statement to Go Auto that a

12 new point in the Seattle market "had already been awarded, and if the award had not been

13 formally approved yet it would be shortly."  Dkt. # 23 ¶¶ 4.23, 6.3.  This is a statement

14 of existing fact:  the point had already been awarded or at least internally approved.

15 JLRNA's argument conflates the representation of an existing fact and the implication of

16 that existing fact on future outcomes.  Reading the amended complaint in the light most

17 favorable to Plaintiffs, they allege that based on the *existing fact* that JLRNA approved a

18 new point in the Seattle market, there was an *increased likelihood* of the opening of a

19

20

21

22

23

24

25

26

ORDER - 5

competitor dealership. *See id.* ¶¶ 4.24–4.25. This representation of existing fact, and the implication of that fact, resulted in the lower goodwill purchase price.[2]

### 2.    Intent

A defendant is liable for a misrepresentation that "although not made directly to the [plaintiff], is made to a third person and the [defendant] intends or has reason to expect that its terms will be repeated or its substance communicated to the [plaintiff], and that it will influence [plaintiff's] conduct in the transaction or type of transaction involved." *Haberman v. Wash. Pub. Power Supply Sys.*, 744 P.2d 1032, 1070 (Wash. 1987) (citing Restatement (Second) of Torts § 533)) (emphasis omitted). In short, a defendant is liable for a misrepresentation made to a third party if the defendant intends for the statement to reach the plaintiff and influence the plaintiff's behavior.

JLRNA argues the amended complaint at most alleges Mr. Eberhardt intended to influence *Go Auto* by giving it a new reference point for contract negotiation, not that Mr. Eberhardt intended to influence *Plaintiffs'* actions. Dkt. # 25 at 15–16. The Court disagrees. As Plaintiffs point out, the amended complaint explicitly states "JLRNA knew and intended that Go Auto would use the new point in the contract negotiation with Plaintiffs to justify a reduction in the purchase price" and "JLRNA knew and intended

---

[2] JLRNA's motion makes multiple arguments regarding discrepancies between Plaintiffs' original complaint and amended complaint. For example, JLRNA points out the original complaint alleged the price reduction was justified by a "*potential* new point" while the amended complaint alleges it was justified by a "*forthcoming* new point." Dkt. # 25 at 9, 14 (emphasis in original). Courts are "not required to accept as true contradictory allegations in an amended complaint without more facts." *Morales v. City and County of San Francisco*, 603 F. Supp. 3d 841, 846 (N.D. Cal. May 20, 2022) (cleaned up). Here, however, the Court does not find that any of the alleged discrepancies raised by JLRNA present true inconsistencies between Plaintiffs' original and amended complaint. Accordingly, the Courts accepts as true all factual allegations in the amended complaint.

for the false statement to affect the purchase price." Dkt. # 26 at 15. This later statement—that JLRNA "intended for the false statement to affect the purchase price"—necessarily means JLRNA intended for Plaintiffs to accept a lower purchase price.

JLRNA further argues it is implausible that Mr. Eberhardt would intend to lower the goodwill purchase price when he did not know the exact amount Plaintiffs and Go Auto agreed to in their letter of intent. Dkt. # 25 at 16–18. Again, the Court disagrees. Plaintiffs allege "a lower purchase price would make it easier for JLRNA to find one or more buyers" who would help JLRNA accomplish its goal of separate ownership of the dealerships. Dkt. # 23 ¶ 6.7. Plaintiffs further allege Mr. Eberhardt's actions may have been influenced "by personal animus between Mr. Eberhardt and Mr. Monjazeb." *Id.* These factual allegations plausibly establish intent. It is plausible that even without knowing the exact goodwill purchase price, Mr. Eberhardt understood a lower price makes it easier to find an alternative willing buyer. It is also plausible Mr. Eberhardt may have been motivated by personal animus against Mr. Monjazeb, a fact the Court must accept as true at the pleading stage. JLRNA disputes whether Mr. Eberhardt would have tried to lower the goodwill purchase price based on his alleged animus toward Mr. Monjazeb, but this is an issue of fact not appropriate for a motion to dismiss. In any case, it is only one of two plausible reasons offered by Plaintiffs as to why Mr. Eberhardt intended to lower the goodwill purchase price for the dealerships.

### 3.    Justifiable Reliance

"Under Washington law, a fraud plaintiff must plead and prove that he justifiably relied on the defendants' misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007). "Whether a party justifiably relied upon a misrepresentation is an issue of fact." *Id.* Plaintiffs sufficiently plead that they justifiably relied on Mr. Eberhardt's statement to reduce the goodwill purchase price for the dealerships. Plaintiffs allege they

1    "had no reason to think Mr. Smith was lying in communicating the statements made by

2    Mr. Eberhardt about the new point."  Dkt. # 23 ¶ 6.10.  They further allege they believed

3    the statement was credible because Mr. Eberhardt previously threatened to add a new

4    point to the Seattle market due to low customer satisfaction index scores at Plaintiffs'

5    dealerships.  *Id.* ¶¶ 4.19, 6.10.  That is sufficient.  JLRNA raises reasons Plaintiffs should

6    *not* have relied on the representations, including that Go Auto had a vested interest in

7    reducing the goodwill purchase price, Plaintiffs did not directly confirm the statement

8    with JLRNA, the amount of the price reduction was unreasonable, and Plaintiffs had

9    improved their customer satisfaction index scores and so should not have expected Mr.

10   Eberhardt to carry out his threat.  Dkt. # 25 at 18–20.  However, these are all factual

11   issues not appropriate for resolution on a motion to dismiss.

12              **4.    Falsity**

13        Next, Plaintiffs adequately plead falsity.  Plaintiffs allege "Mr. Eberhardt's

14   statement was false when made, and he knew it was false."  Dkt. # 23 ¶ 4.23; *see also id.*

15   ¶ 6.6.  This is supported by further factual allegations that despite Mr. Eberhardt stating

16   a new point had already been approved, an affiliate of JLRNA later informed Go Auto

17   "that no new point was being added to the Seattle market."  *Id.* ¶ 4.28.  These allegations

18   are not conclusory.

19              **5.    Materiality**

20        Finally, JLRNA argues Mr. Eberhardt's statement was not material because

21   "given the regulatory and economic hurdles involved, the award of a new point would

22   *not* justify an immediate $25 price reduction."  Dkt. # 25 at 21 (emphasis in original).

23   However, the fact that JLRNA had taken a tangible step toward opening a new point in

24   the Seattle market—even crediting JLRNA's arguments that overcoming regulatory and

25   economic hurdles was not a certainty—was undoubtedly material to the goodwill

26

ORDER - 8

1    purchase price of Plaintiffs' dealerships.  As Plaintiffs point out, the mere fact that

2    Plaintiffs and Go Auto agreed to significantly lower the goodwill purchase price confirms

3    the statement's materiality.  Dkt. # 26 at 20.  Moreover, while JLRNA argues a $25

4    million price reduction was not reasonable, that argument goes to the issue of damages

5    rather than whether the statement was a material contributor to Plaintiffs' harm.

6         In sum, the Court finds Plaintiffs adequately plead each of the fraud elements

7    raised in JLRNA's motion.

8         **B.    Negligent Misrepresentation**

9         The elements of negligent misrepresentation are "(1) the defendant supplied

10   information for the guidance of another in his or her business transactions, (2) the

11   information was false, (3) the defendant knew or should have known that the information

12   was supplied to guide the plaintiff in his or her business transactions, (4) the defendant

13   was negligent in obtaining or communicating the false information, (5) the plaintiff relied

14   on the false information, (6) the plaintiff's reliance was reasonable, and (7) the false

15   information proximately caused the plaintiff damages." *Repin v. State*, 392 P.3d 1174,

16   1191 (Wash. Ct. App. 2017).  JLRNA argues Plaintiffs fail to allege representation of an

17   existing fact, intent, and reasonable reliance.  These elements are common to a claim for

18   fraudulent misrepresentation and fail for the same reasons discussed above.

19        **C.    Implied Covenant of Good Faith and Fair Dealing**

20        "[T]here is in every contract an implied duty of good faith and fair dealing that

21   obligates the parties to cooperate with each other so that each may obtain the full benefit

22   of performance." *Rekhter v. State*, 323 P.3d 1036, 1041 (Wash. 2014) (quotes omitted).

23   The duty "cannot add or contradict express contract terms and does not impose a free-

24   floating obligation of good faith on the parties." *Id.*  Rather, it "arises only in connection

25   with terms agreed to by the parties." *Id.*

26

1    Plaintiffs plausibly allege a good faith and fair dealing claim. The parties'

2   dealership agreement gave Plaintiffs the right to sell their dealerships, subject to

3   JLRNA's right of first refusal to purchase the dealerships on the same terms and to assign

4   its right to a third party. Dkt. # 23 ¶¶ 5.3, 4.4, 4.6. Plaintiffs allege JLRNA made false

5   statements to Go Auto to drive down the dealerships' goodwill purchase price so that

6   JLRNA could more easily find an alternative buyer and exercise its right of first refusal

7   and assignment of that right at a reduced price. *Id.* ¶¶ 5.9, 6.7. This plausibly alleges

8   that JLRNA acted in bad faith to undermine the full benefit of Plaintiffs' right to sell their

9   dealerships and JLRNA's obligation to pay Plaintiffs on the same terms should it elect to

10   exercise its right of first refusal. The fact that JLRNA made the alleged false statement

11   months before it exercised its right of first refusal is immaterial. What matters is that

12   Plaintiffs plausibly allege JLRNA took actions so that when it came time for Plaintiffs to

13   sell the dealerships and for JLRNA to exercise its right of first refusal, Plaintiffs were

14   deprived of the benefit of their bargain.

15       **D.    Tortious Interference with Business Expectancy**

16       "A plaintiff claiming tortious interference with a contractual relationship or

17   business expectancy must prove five elements: (1) [T]he existence of a valid contractual

18   relationship or business expectancy; (2) that defendants had knowledge of that

19   relationship; (3) an intentional interference inducing or causing a breach or termination

20   of the relationship or expectancy; (4) that defendants interfered for an improper purpose

21   or used improper means; and (5) resultant damage." *Tacoma Auto Mall, Inc. v. Nissan*

22   *N. Am., Inc.*, 279 P.3d 487, 498 (Wash. 2012).

23       JLRNA raises five reasons this claim should be dismissed. First, JLRNA argues

24   that because Plaintiffs allege JLRNA interfered with the "[letter of intent] contract

25   expectancy of $75 million for the sale of the [d]ealerships," Plaintiffs are required to

26

ORDER - 10

1    "plead that JLRNA had knowledge of the $75 million purchase price."  Dkt. # 25 at 24.

2    The Court disagrees.  As Plaintiffs note, the knowledge element of a tortious interference

3    claim requires only that "defendants had knowledge of that *relationship*."  *Tacoma Auto*

4    *Mall*, 279 P.3d at 498 (emphasis added).  Plaintiffs plead "JLRNA had knowledge of the

5    deal" between Plaintiffs and Go Auto.  Dkt. # 23 ¶ 8.3.

6         Second, JLRNA argues Plaintiffs fail to plead that JLRNA "intended to cause or

7    had any reason to cause a reduction in the purchase price."  Dkt. # 25 at 25.  The Court

8    disagrees for the reasons discussed in the fraudulent misrepresentation analysis above.

9         Third, JLRNA argues Plaintiffs fail to plead JLRNA "caused a breach or

10   termination of the proposed sale" because "Plaintiffs' relationship with Go Auto

11   continued even after JLRNA purportedly made the July 2023 representation to Go Auto."

12   *Id.*  Although the exact language of the tortious interference test suggests the interference

13   must cause "a breach or termination of the relationship or expectancy," courts have found

14   "any 'injury' to a contract or business expectancy resulting from the interference will

15   suffice."  *Riverside Pub. Co. v. Mercer Pub. LLC*, No. 11-cv-1249, 2013 WL 1346589,

16   *5 (W.D. Wash. Apr. 3, 2013).  Here, Plaintiffs allege they suffered an injury because

17   their expectancy for the goodwill purchase price was substantially reduced.  Dkt. # 23 ¶

18   8.3.

19        Fourth, JLRNA argues its exercise of the right of first refusal is not actionable.

20   Dkt. # 25 at 25.  In response, Plaintiffs argue Mr. Eberhardt's misrepresentation is "the

21   critical fact" and "the primary act of interference."  Dkt. # 26 at 24.  The Court agrees

22   that is sufficient to support the tortious interference claim.

23         Fifth, JLRNA argues Plaintiffs fail to allege Mr. Eberhardt's statement regarding

24   approval of a new point was either a fraudulent or negligent misrepresentation. This is

25   repetitive of arguments raised above and is rejected for the same reasons.

26

ORDER - 11

In sum, the Court finds Plaintiffs plausibly allege a claim for tortious interference with business expectancy.

### V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss.

Dated this 3rd day of September, 2025.

_____

The Honorable Richard A. Jones
United States District Judge

ORDER - 12